UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JIMMY DELL BOWEN,

    Petitioner,

v.                                      CASE NO: 8:07-CV-966-T-30TBM

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.
_____/

# ORDER

Petitioner (hereinafter "Bowen" or "Petitioner"), an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #1). The Court has considered the petition, Respondent's response (Dkt. #8), Petitioner's reply (Dkt. #13), and the Petitioner's motion to invoke equitable tolling (Dkt. #25). The Court having reviewed the pleadings with their various appendices and the state court record concludes that the petition should be dismissed because it is time barred. Were it not time barred, the petition would fail because it is both factually incorrect and insufficient on the merits.

**PROCEDURAL BACKGROUND**

In 1993, Bowen was convicted in a jury trial of second degree murder, attempted first degree murder, and carrying a concealed firearm. The state appellate court reversed saying

that the trial court erred in not allowing Bowen to represent himself, and remanded for a new trial. Bowen v. State, 677 So. 2d 863 (Fla. 2d DCA 1996). The Florida Supreme Court affirmed. State v. Bowen, 698 So. 2d 248 (Fla. 1997).

On remand, Bowen changed his plea to guilty when the state court agreed to sentence him to seventeen years in prison on the first two counts, and five years on the carrying a concealed firearm count to run concurrently, with credit for time served. Bowen appealed. The state appellate court dismissed the appeal on October 21, 1998. Bowen v. State, 727 So. 2d 921 (Fla. 2d DCA 1998) [table].

On January 12, 1999, Bowen filed a motion for correction of sentence under Florida Rule of Criminal Procedure 3.850 asking the court to vacate the three year mandatory minimum portion of his sentence. A hearing was held on February 24, 1999, and, on June 6, 1999, the trial court denied the motion. Bowen appealed and on March 23, 2001, the state appellate court affirmed. Bowen v. State, 785 So. 2d 479 (Fla. 2d DCA 2001) [table]. The mandate issued on April 16, 2001.

In early 2001, Bowen was notified that he was to be released on conditional release status on April 1, 2001. Bowen believed that he should be released without restrictions and therefore filed an emergency motion to vacate, set aside, or correct sentence on March 19, 2001, pursuant to Florida Rule of Criminal Procedure 3.850. That motion raised the same grounds that are raised in the present petition before this Court. On July 9, 2001, Bowen filed a motion for oral argument and expedited hearing. On July 12, 2001, the trial court denied the Rule 3.850 motion.

Although Bowen claims he did not get a copy of the Order denying his motion, he acknowledges that on September 15, 2001, he called the Clerk's office in Hillsborough County, Florida, and was told that the motion had been denied on July 12, 2001. Having been released on conditional release on April 1, 2001, Bowen was out of prison and living in Hillsborough County. He could easily have obtained a copy of the written Order had he wanted one by going to the Clerk's office and requesting same. Instead, he claims that he requested a copy be mailed to his home address and the Clerk refused. (See Bowen's reply brief, page 5, as to his receipt of notice and request for a mailed copy.) On January 9, 2002, the trial court dismissed Bowen's motion for oral argument and expedited hearing.

Bowen remained on conditional release until August 1, 2005, when he was arrested for violating the terms of his conditional release, and returned to prison to complete his sentence. On August 9, 2005, Bowen filed an emergency petition for writ of habeas corpus, once again asserting that he should never have been placed on conditional release. He filed an amended petition on August 16, 2005. Like his most recent 3.850 motion, these petitions contended that his plea of guilty in September of 1998 was based on a specific agreement that he was to serve an eight and one-half year sentence, day-for-day, with no conditional release to follow. He also argued that, at the time of entering his guilty plea, he was not put on notice that conditional release was a possibility.

On December 8, 2005, the trial court denied the original and amended petitions for writ of habeas corpus. Bowen appealed. On January 3, 2007, the appellate court affirmed the trial court's denial of relief in an unwritten *per curiam* opinion. Bowen v. State, 947 So.

2d 1169 (Fla. 2d DCA 2007) [table]. Bowen filed a motion for rehearing, clarification, or certification, but the motion was denied on February 8, 2007, and the mandate issued on February 26, 2007.

Bowen filed this petition seeking federal habeas relief on June 1, 2007, on the following two grounds:

Ground One: The state violated plea agreement thereby violating federal due process.

Ground Two: Sentencing court violated due process by failure to fully inform Bowen of consequences/obligations of plea.

## **TIMELINESS**

Since this petition concerns a sentence entered after 1996, the petition is subject to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A one year limitation period applies to petitions for writ of habeas corpus under AEDPA. Pursuant to 28 U.S.C. §2244(d)(1), the one year limitation period begins to run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The latest beginning date potentially available to Bowen would be (D), that he was not aware of the factual predicate of the claim (that he was subject to conditional release) until early 2001. He, in fact, filed a motion to vacate or correct his sentence under Florida Rule of Criminal Procedure 3.850 in March of 2001, contending that he should never have been made subject to conditional release. That motion was denied on July 12, 2001, and he acknowledges that he received actual notice of the denial on September 15, 2001. Therefore, even under Bowen's best argument, his one year limitation period ended in 2002. He did not file his petition in this Court until July 1, 2007 (the date he purportedly signed his petition), almost five years late.

Bowen has requested this Court to equitably toll his one year limitation period. He argues that equitable tolling is appropriate because the Clerk affirmatively misled him by failing to mail him a copy of the state court's denial of his 3.850 motion. He cites to several cases including <u>Knight v. Schofield</u>, 292 F. 3d 709 (11th Cir. 2002) concerning a court clerk who inadvertently sent notice of a decision to the wrong person. These cases do not apply to Bowen. He admits that the clerk gave him actual notice on September 15, 2001, that his motion had been denied. Even if he were granted equitable tolling for the period of time that he did not know of the denial, that would only delay the beginning of the one year limitation period until October 15, 2001, (the end of the time for direct appeal after he learned of the denial) still leaving his petition time barred.

For equitable tolling to apply, the circumstances surrounding his late filing must have been both beyond his control and unavoidable even with diligence. Here, Bowen did not act

diligently once he learned of the denial of his 3.850 motion. Neither excusable neglect nor lack of knowledge about the period of limitation is sufficient to support equitable tolling. Sandvik v. United States, 177 F. 3d 1269 (11th Cir. 1999).

Since the petition was filed after the expiration of the one year limitation period and equitable tolling is not available, the petition is untimely and must be dismissed.

## **ALTERNATIVE DISCUSSION OF THE MERITS**

Since Bowen's claims overlap, they will be discussed together. Those claims are:

Ground One:	The state violated plea agreement thereby violating federal due process.

Ground Two:	Sentencing court violated due process by failure to fully inform Bowen of consequences/obligations of plea.

Bowen's claims are based on a misstatement of the facts. He contends that he pled guilty in 1998 because he had a binding plea agreement with the state to serve eight and a half years in prison, day-for-day, with no probation to follow. In fact, what he received was a seventeen year sentence with an *estimate* that he would probably serve about fifty percent of that time. This estimate was based on another prisoner having been released after serving about fifty percent of his time. There was no agreement that Bowen would serve a day-for-day sentence for any particular amount of time.

Bowen claims that this "agreement" took place during his sentencing hearing. Specifically, the discussion, among the court, prosecutor (Mr. Bedell) and defense counsel (Ms. McGucken) was as follows:

THE COURT:	Good morning, Mr. Bowen. Okay. You're all ready for trial?

| | |
|---|---|
| MR. BEDELL: | Well, Ms. McGucken has just told me that Mr. Bowen has, um, has made a offer – an offer to plead to a certain number of years that I would need to talk with somebody in my office about before I could, um, extend that offer. I think I could probably accomplish that in the next 20 or 30 minutes. |
| THE COURT: | Good. Okay. |
| MR. BEDELL: | If you want me to - - |
| THE COURT: | Yes. Certainly. |
| MR. BEDELL: | – or if you'll give me the time to do it? |
| THE COURT: | Certainly. Okay. |
| | (Thereupon, a discussion off the record was held) |
| | (Thereupon, the case was passed) |
| THE STATE: | Jimmy Dell Bowen. |
| THE COURT: | What was the offer, by the way? |
| MS. MCGUCKEN: | Judge, may I approach the bench? |
| THE COURT: | Yeah. Sure. |

BENCH CONFERENCE COMMENCED

| | |
|---|---|
| THE COURT: | What – what's the offer? What's the offer? |
| MS. MCGUCKEN: | Judge, my client offered to take 17, which is the bottom of the permitted guidelines. |
| THE COURT: | And they won't let you do that? |
| MR. BEDELL: | (Thereupon, shakes his head). |

| | |
|---|---|
| THE COURT: | Who's not letting you do that? Or you don't wanna do it? |
| MR. BEDELL: | Well, I went to see Shirley Williams and Jay Pruner, who are now the two ranking members of the homicide committee, and they said, "No." And, um, they said I could offer 22, which -- |
| THE COURT: | There's a big jail difference. |
| MS. MCGUCKEN: | It is to him. |
| THE COURT: | No. I'm talking to the State. |
| MS. MCGUCKEN: | Oh. |
| MR. BEDELL: | Which – which, um, which is declined. Um -- |
| MS. MCGUCKEN: | No, Judge. Um -- |
| MR. BEDELL: | – his -- |
| MS. MCGUCKEN: | I'm sorry. |
| MR. BEDELL: | No. |
| THE COURT: | In actual time, how much is he gonna serve between 17 and 22? |
| MR. BEDELL: | When I talked to the Department of Corrections about a similar case in 1993, they told me that they would be serving about 50% of their time. And, um -- |
| THE COURT: | So take 50% off of what? 17? What is that? Five, seven years difference? |
| MR. BEDELL: | It's about 8 – 8 1/2 versus 11. |
| MS. MCGUCKEN: | Now, Judge -- |
| THE COURT: | Yeah. I – I know. Yeah? |

MS. MCGUCKEN: – you could sentence him --

THE COURT: I could sentence him to 17 years.

MS. MCGUCKEN: Yes, you could. And if you wanna sentence him to 17, he will take that.

* * *

MS. MCGUCKEN: Judge, I'm – I'm standby Counsel.

THE COURT: Right.

MS. MCGUCKEN: I went over the form with Mr. Bowen, but I wrote "standby Counsel" on here, so.

THE COURT: I appreciate that. I – yeah. And the record is – is clear. I – I can appoint Ms. McGucken even as we speak, because you're entering a plea, Mr. Bowen. Do you want me to appoint her for the purposes of you're entering this plea?

DEFENDANT: That's correct, yes. Yes.

THE COURT: Okay. Then I will appoint you for the purposes of Mr. Bowen's entering a plea. Raise your right hand please.

Thereupon, JIMMY DELL BOWEN

being duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

THE COURT: Put your hand down. Now, Mr. Bowen, you correct me if I say something that is not your understanding of what it's supposed to be.

You correct me if you do not understand anything that I say or stop me. Um, you are pleading guilty in your best interest to these charges:

|                  | Murder in the Second Degree; Attempted Murder in the First Degree; each of them punishable by up to, um, life imprisonment; you understand that? |

DEFENDANT: That's correct.

THE COURT: That's the maximum. You're also pleading guilty in your best interest to a Carrying Concealed Firearm charge, which is punishable by up to five years in Florida State Prison, correct?

DEFENDANT: That's correct.

MS. MCGUCKEN: Judge, um, he – I was, um, and I --

THE COURT: Go ahead.

MS. MCGUCKEN: – I wasn't sure that you would take a plea, um, of no contest?

THE COURT: No. Not on these facts.

MS. MCGUCKEN: Okay.

THE COURT: I'll take a guilt --

MS. MCGUCKEN: That's fine.

THE COURT: – guilty best interest plea.

MS. MCGUCKEN: That's fine. I'm just making that clear.

THE COURT: Okay. You are pleading guilty in your best interest to each of those charges; is that true, Mr. Bowen?

DEFENDANT: That's correct.

THE COURT: Okay. Has Ms. McGucken, have I, has anybody threatened or pressured you in any way to get you to do this?

DEFENDANT: No.

THE COURT: Okay. Has Ms. McGucken promised you anything to get you to do this?

DEFENDANT: Nothing, your Honor.

THE COURT: Okay. And – and you don't have any trouble reading, do you, Mr. Bowen?

DEFENDANT: (Thereupon, shakes his head).

THE COURT: Okay. Did you read this plea form?

DEFENDANT: Yes, ma'am.

THE COURT: Do you understand what it tells you about your rights?

DEFENDANT: I understand it perfectly.

THE COURT: Okay. And, Ms. McGucken, have you reviewed Mr. Bowen's rights with him?

MS. MCGUCKEN: Yes, Judge. Actually, I make it a policy to read the plea form out loud; so we did that very thing.

THE COURT: Okay. And are you satisfied that Mr. Bowen understands his rights?

MS. MCGUCKEN: Yes, I am.

THE COURT: And just so the record's clear, Mr. Bowen's appeared before this Court several times. I think he has a full understanding of – of, um, what he's doing. You're not taking any drugs or medicine are you, at this time?

DEFENDANT: No, your Honor.

THE COURT: Okay. Now this is an open plea, um, in the sense that the State offered 22 years, um, you offered 17.

The State wasn't coming off the 22 and I am choosing to allow you to plead to the 17 years based on all the circumstances in this case. Um --

MS. MCGUCKEN: And actually, Judge, I checked that it was a negotiated plea. It wasn't with the State, but I thought --

THE COURT: It was with the Court.

MS. MCGUCKEN: – that the – the Court was gonna do that, so I called it a negotiated plea; it doesn't say with the State, so that's why I checked that form.

THE COURT: That's fine.

MS. MCGUCKEN: Okay.

THE COURT: It was negotiated to that extent, except it was negotiated with the Court, as opposed to the State.

MS. MCGUCKEN: Right.

THE COURT: Just so the record is clear, I made my position clear at the bench, the State hasn't offered 30 or 40 years, the State has offered nothing below 22 years; is that right, Mr. Bedell?

MR. BEDELL: That is correct, your Honor.

THE COURT: Okay. Quite frankly, having looked at everything, including the number of years this case has, um, been alive; including the necessity of bringing in out-of-state witnesses, the difference 22 and 17, makes no sense to me, quite frankly, not to allow Mr. Bowen to plead to the 17 years.

Again, if the State's position was 30 or 40, I would not be doing this. Anyway, anything else? You've gotta put a factual basis on, right, Mr. Bedell? Please --

MR. BEDELL: Yes, your Honor.

THE COURT: – go ahead.

MR. BEDELL: And by the way, um, up until now or earlier when you were asking Mr. Bowen what's he pleading to, you said Murder in the Second Degree; and it's Murder in the Second Degree and Attempted Murder in the First Degree with a Firearm alleged in each --

THE COURT: Okay.

MR. BEDELL: – count.

THE COURT: So there's a minimum mandatory?

MR. BEDELL: Correct. Although he's satisfied that, um, by now.

THE COURT: Right.

MR. BEDELL: But in terms of his classification, I don't know whether that would make a difference.

THE COURT: Okay.

MR. BEDELL: But I just want it to be clear.

THE COURT: You understand that, and I didn't put that, that wasn't part of the original discussion. But there is – it is a Murder in the Second Degree charge, with a firearm; and an Attempted Murder in the First Degree with a Firearm?

DEFENDANT: There's a three year minimum mandatory; is that correct?

THE COURT: That's right.

MR. BEDELL: On each count.

DEFENDANT: But it's concurrent?

THE COURT: It is concurrent. Thanks. Go ahead.

MR. BEDELL: On February 6th of 1993, at approximately 8:05 p.m., at 1948 East Hillsborough Avenue in Tampa, Florida, which is in Hillsborough County, defendant, Jimmy Bowen, shot Floyd Hall, um, outside a bar that's called Leo's Lounge.

Mr., um, Bowen also shot Mickey Lemmons outside of the bar. Mr. Hall died at the scene; Mr. Lemmons lived and, um, was taken to Tampa General Hospital where, um, he was operated on and survived the operation.

Mr. Bowen was arrested on February 8, 1993, at 11000 – or 1101 East Hillsborough Avenue, um, in Tampa, Florida, at 10:47 a.m. by Officer Ron Pfeiffer.

When Officer Pfeiffer arrested Mr. Bowen, Mr. Bowen possessed a, um, .38 caliber revolver, which was later sent to the Florida Department of Law Enforcement Crime Laboratory, and that revolver was compared to, um, one of the bullets recovered during this case.

And I don't remember if it was the one that came from Mr. Lemmons or the one from Mr. Hall, I believe it was the one from Mr. Lemmons, and, um, positively, um, matched to that gun by Mike Hall, um, who's a firearms analyst there, and is no relation to, um, the victim, Mr. Floyd Hall.

All of this started as a result of an argument between Mr., um, Bowen and Mr. Lemmons, um, which began in the bar, went out into the parking lot, um, and culminated in the – the shooting.

THE COURT: Anything else?

MR. BEDELL: No, your Honor.

THE COURT: I'm satisfied the State could establish a prima facie case. Mr. Bowen?

DEFENDANT: I have nothing further, your Honor.

THE COURT: Fine.

See sentencing transcript, stamped page numbers 172-175, 178-187, exhibit A, appendix filed by Respondent.

An approximation of the time that will actually be served on a seventeen year sentence is just that, an approximation. It is not an agreement for a specific time to be served, day-for-day.

Bowen also complains that he was not notified of the possibility of being placed on conditional release. While that is true, the contrary is also true - he was not told that he would not be placed on conditional release, nor was he told that he would be treated any differently than any other prisoner receiving a seventeen year sentence.

## **REVIEW OF THE PETITION UNDER AEDPA**

The Court now turns to a review of whether the state court unreasonably applied federal law or made an unreasonable determination of the facts. Since Petitioner's conviction was entered after the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his petition is subject to the provisions thereof. When a federal court is asked to review a criminal conviction from state court, 28 U.S.C. §2254 places a heavy burden upon the petitioner. Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim resulted in a decision that:

    (1)    was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the

> United States, or
>
> (2)   was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. §2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

In <u>Williams v. Taylor</u>, 529 U.S. 362, the Supreme Court held:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Additionally, federal habeas relief is available under the "unreasonable application" standard only if the state court's application of clearly established federal law was "objectively unreasonable."  <u>Parker v. Head</u>, 244 F.3d 831, 835 (11th Cir. 2001).  In a proceeding under the second standard (an unreasonable determination of the facts), a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1).

When the state court considered Bowen's claims, it made the following findings of fact and conclusions of law:

> In his Emergency Petition for Writ of Habeas Corpus and Amended Emergency Petition for Writ of Habeas Corpus (hereinafter referred to collectively as "Petitions") [footnote omitted], Defendant alleges that the plea agreement he entered into on September 28, 1998, has been violated, resulting in a violation of due process.  Specifically, he states that he is currently being held without bail for violating his conditional release, but asserts that he

should never have been placed on conditional release, as neither the State nor the trial court put him on notice of this possible condition as part of his plea agreement.

      A review of the record reflects that Defendant was placed on conditional release on April 1, 2001. (See Certificate of Conditional Release, attached). As to his placement on conditional release, Defendant is correct that he was not put on notice to the possibility of being place [sic] on conditional release following his sentence. (See Transcript, September 28, 1998, p. 9, attached). However, the fact that Defendant did not receive actual notice of this possible condition of his plea agreement does not render this a violation of his plea agreement. In *Mayes v. Moore*, two petitioners claimed they had not been informed that they were eligible for placement in the conditional release program under Statute 947.1405, and, therefore, sought a writ of habeas corpus. 827 So. 2d 967 (Fla. 2002). The Florida Supreme Court held that petitioners' lack of actual notice did not entitle them to a writ of habeas corpus, as everyone is deemed to have constructive knowledge of this law:

> Prior to the 1988 enactment of the [C]onditional [R]elease [S]tatute, [Florida Statutes section 947.1405] prison inmates' sentences expired when, with the combination of actual time served and gain time, they were released from prison. Since 1988, however, the Legislature has provided that certain inmates must remain under supervision, as determined by the commission, after release from prison for a period of time equal to the amount of gain time awarded. This supervision has been provided under the terms of the statute, and thus, all have constructive knowledge of the applicable law.

*Id*. at 971-972.

Additionally, in *Duncan v. Moore*, the Florida Supreme Court held that placing a defendant on conditional release did not constitute a violation of due process. 754 So. 2d 708 (Fla. 2000). Therefore, the court finds that the fact that Defendant in the present case had no actual notice of possibly being placed on conditional release does not render his placement on conditional release (and subsequent violation of conditional release) a violation of his due process. As such, Defendant is not entitled to relief on his Petitions for Writ of Habeas Corpus.

Exhibit 18, at pp. 2-3.

In reaching its decision, the state court was applying the law of the state of Florida concerning sentencing and custodial incarceration. The state appellate court determined that the trial court properly applied state law in sentencing Petitioner. The state's interpretation of its own laws, including those concerning sentencing and imprisonment, provides no basis for federal habeas relief unless it violates the very minimal federal requirements of due process. Petitioner points to no part of this sentencing or conditional release process that violated his federal constitutional rights.

Federal law only requires that a releasee be afforded certain minimal proceedings to satisfy the due process requirements of the federal constitution. <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972). Bowen was afforded all of his federal rights of due process required by <u>Morrissey</u>.

Because the state court did not misapply federal law and its finding of fact were supported by the evidence before it, this Court would deny the petition on its merits even it if it were not time barred.

## **CONCLUSION**

It is therefore ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is hereby DISMISSED because it is time barred.

2. Were the petition not time barred, it would be denied on its merits.

3. The Clerk is directed to terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on February 25, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2007\07-cv-966.deny 2254.wpd*